UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CLARA LAMONICA, | : | Case No. 1:04CV459 |
| Plaintiff, | : | |
| | : | JUDGE KATHLEEN O'MALLEY |
| | : | |
| v. | : | |
| | : | |
| MICHAEL O. LEAVITT, SECRETARY | : | MEMORANDUM AND ORDER |
| OF THE UNITED STATES DEPARTMENT | : | |
| OF HEALTH AND HUMAN SERVICES, | : | |
| Defendant. | : | |

This is an action for judicial review of the final administrative decision of the Secretary of Health and Human Services denying the application of the plaintiff, Clara Lamonica ("Lamonica" or "Plaintiff"), for reimbursement for medical services she received outside of her Kaiser Medicare Part C Health Plan ("Kaiser"). According to Local Rule 72.2(b), the case was sent to Magistrate Judge William H. Baughman, Jr. for a Report and Recommendation ("R&R").

In his R&R, the Magistrate Judge affirmed the decision of the Administrative Law Judge ("ALJ"), holding that Kaiser need not reimburse medical expenses incurred by Lamonica outside the organization. Plaintiff filed a timely Objection to the R&R, and Defendant filed a response. After conducting a *de novo* review of the entire record, the Court does not fully adopt the Magistrate

Judge's recommendation and, therefore, orders that this case be **REMANDED** to the ALJ for further fact finding in accordance with this opinion.

## I.    FACTUAL BACKGROUND

The Plaintiff participated in the "Medicare Plus Choice" plan, a Medicare Part C ("M+C") program, offered by Kaiser.  She suffered from a dermatological condition which causes sores and blisters to form in the mouth.  The record shows that this condition manifested itself for the first time in 1994, at which time she was treated by Dr. Gordon Pederson - a Kaiser oral surgeon.  Lamonica received treatments for a period of seven years from Kaiser physicians, with none producing any lasting or meaningful results.  Indeed, the condition worsened over the years.  In August of 2001, Dr. Pederson recommended that Lamonica see a dermatologist outside the organization, but Kaiser refused to approve this referral.

Without any adequate treatment provided, Lamonica's condition worsened in September 2001 and again in October, spreading from her mouth to her scalp and back.  At this point, the sores in her mouth were so severe that Lamonica could not eat, and her family began to fear that the condition might prove fatal.  Despite this, Lamonica continued to seek treatment from Kaiser doctors.  The record shows, and the parties do not dispute, that  Lamonica's condition was indeed severe, causing her a significant amount of pain.  On October 10, 2001, she finally saw Kaiser's "Chief of Dermatology," Dr. Vernon Sackman, who provided treatment which the Magistrate Judge described as symptomatic and summary.  In other words, he did nothing to improve Lamonica's condition or give her any hope that he could eventually do so.

Finally, on October 15, 2001, a week after seeing Dr. Sackman, Lamonica was seen by Dr. Korman, an out-of-organization dermatologist.  Dr. Korman provided medication for the condition,

2

which resulted in immediate improvement of Lamonica's condition and provided an eventual cure.

## II.    ANALYSIS

Lamonica claimed reimbursement for Dr. Korman's services pursuant to 42 C.F.R. § 422.113. That regulation provides that an M+C organization will be financially responsible for emergency services "[r]egardless of whether the services are obtained within or outside the M&C organization" and "[r]egardless of whether there is prior authorization for the services."  42 C.F.R. § 422.113(b)(2)(i) & (ii).  The regulation, in relevant part, defines "emergency services" as those "(A) [f]urnished by a provider qualified to furnish emergency services; and (B) [n]eeded to evaluate or stabilize an emergency medical condition."  § 422.113(b)(1)(ii).  In interpreting this regulation, the Magistrate Judge "reluctantly conclude[d] that the regulation upon which [Plaintiff] relies has <u>as a precondition</u> the absence of immediate medical attention available within the organization [*i.e.*, within Kaiser]." (R&R at 5, emphasis added.)  Finding that Lamonica had medical treatment available to her within Kaiser, regardless of the repeated poor quality and ineffectiveness of that treatment, the Magistrate Judge reasoned that she could not avail herself of the reimbursement benefits provided in § 422.113.  *Id.* at 5-6.

The Plaintiff makes two primary arguments in her objections to the R&R.[1]  She first argues

---

[1]

Plaintiff makes a third argument in which she points out that, if this Court agrees with the Magistrate Judge that the regulation at issue "mean[s] that the immediate medical attention must be within the organization," then, through construction of the regulation, this interpretation would also dictate that the organization provide <u>qualified</u> emergency services in order to "evaluate and stabilize the emergency medical condition."  Plaintiff contends that, because she was treated by Kaiser doctors for approximately seven years with no cure and no meaningful relief from her constant pain and discomfort, she did not receive quality emergency services. The Court, however, does not agree with the Magistrate Judge's recommendation that a precondition exists in § 422.113 and, therefore, does not address this objection.

that the Magistrate Judge erred by characterizing the critical inquiry as one in which the court must determine whether the claimant had immediate care available to her <u>within the organization</u>. Plaintiff contends that the regulation establishes no such threshold requirement.

Second, Plaintiff argues that the Magistrate Judge's recommendation would produce unconscionable results by denying reimbursement for care sought outside the organization, even when the care provided within the organization is so ineffective as to constitute a complete absence of meaningful care. Plaintiff argues that the Magistrate Judge's interpretation of the regulation would effectively force those M+C members who receive inadequate care to "watch their condition deteriorate because incompetent emergency care is available within the organization." Plaintiff contends that, due to the failure of Kaiser physicians to treat adequately her condition for a period of seven years, combined with the spread of her malady to her head and back in 2001 and a substantial increase in the pain she was suffering, an acute emergency condition had arisen which necessitated that she seek proper treatment from a provider outside Kaiser.

**A.    The Magistrate Judge Imposed a Condition That Is Not Found In C.F.R. § 422.113.**

Lamonica first objects that the regulation does not require as a precondition to seeking outside emergency care the absence of immediate medical attention available "within the organization." Instead, Plaintiff contends that the regulation dictates that the inquiry focus on whether she "was prudent in her desire to receive immediate medical care with the understanding that if she did not receive it, then she could be putting her health at risk." In its response, Defendant agrees with the Magistrate Judge that Lamonica must establish a lack of immediate medical attention available within Kaiser before turning to the "prudent layperson" test of the regulation. Defendant also contends that

because Lamonica waited from the onset of her severe flare-up in August until mid-October 2001 to have a scheduled appointment with Dr. Korman, Lamonica could not satisfy the "immediate medical attention" element of her claim in any event. For these reasons, the Defendant asserts that the ALJ's finding that Lamonica did not have an emergency medical condition is supported by substantial evidence.

Generally, the judgment of an administrative agency should not be disturbed by a reviewing court if the agency's decision is supported by "substantial evidence" in the record. 5 U.S.C. § 706(2)(E). This standard of review is highly deferential, and courts are not "free to substitute [their] judgment for that of the agency." *Carabell v. United States Army Corps of Eng'rs*, 391 F.3d 704, 707 (6th Cir. 2004), citing *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416 (1971). Despite this acknowledged deference, however, a reviewing court cannot forsake its duty to "thoroughly inquire into the factual bases supporting an agency's conclusions in order to insure that the conclusions reached are rational, reasonable and just in light of evidence presented in the record." *Darin & Armstrong, Inc. v. United States EPA, Region V*, 431 F. Supp. 456 (N.D. Ohio 1976).

The Court finds that the ordinary deferential posture on review does not apply here because the Magistrate Judge added (and the ALJ before him apparently employed) a precondition to reimbursement that does not exist in the text of, and likely was not intended by the authors of, 42 C.F.R. § 422.113. The Magistrate Judge formulated a threshold requirement of the absence of immediate medical care "within the organization", not in an adjudication as applied to the facts of this particular case, but rather as a matter of law with present and future applicability. (R&R at 5, emphasis added). The substantial evidence standard applies only to review of factual adjudications performed by agencies or by other courts on judicial review. This Court respectfully disagrees with

5

the Magistrate Judge's interpretation of the regulation.  The   Court finds that the inquiry under C.F.R. § 422.113 is not a two-step inquiry as the Magistrate Judge concluded, but, instead, requires a one-step analysis of the reasonableness of the claimant's decision to seek treatment outside the system.  While the presence or absence of available emergency medical care within the system is relevant to the question presented under C.F.R. § 422.113, it is not determinative of that question. Accordingly, the Court finds Plaintiff's first objection well-taken and chooses not to adopt the Magistrate Judge's interpretation of § 422.113.

**B.      The Magistrate Judge's Interpretation Of § 422.113 Would Work Unconscionable Results On M+C Members.**

Plaintiff also asserts that the Magistrate Judge's interpretation of the regulation would produce unconscionable results because it would restrict members to possibly endless incompetent care within the M+C organization, so long as a scintilla of care, regardless of its quality, still remained available.  The Magistrate Judge was concerned that, if the focus of the inquiry is placed on quality of care or effectiveness of the medical attention provided rather than on the objective availability of some form of care within the organization, plan members who are dissatisfied with their treatment could simply visit any doctor outside the plan and expect the organization to pay for those services, leaving the ALJ and reviewing courts with the job of second guessing care decisions by plan doctors. (R&R at 6.)   In response, the Plaintiff argues that grossly inadequate treatment within the organization should be equivalent to an absence of immediate medical care.

As the language of the regulation provides, an M+C organization is financially responsible for emergency services "[i]n accordance with the prudent layperson definition of emergency medical condition regardless of final diagnosis."  42 C.F.R. § 422.113(b)(2)(iii) (emphasis added).  The

6

"prudent layperson" definition of emergency medical condition is an objective test: "[e]mergency medical condition means a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that a prudent layperson, with an average knowledge of health and medicine, could reasonably expect the absence of immediate medical attention to result in (A) [s]erious jeopardy to the health of the individual...." § 422.113(b)(1)(i). The focus of the factual inquiry must be on whether a particular claimant's expectation that lack of immediate medical attention will result in harm is reasonable under the circumstances.

This assessment must be made, moreover, in context - i.e., with an eye toward all facts and circumstances known to the patient at the time the decision to seek outside emergency treatment is made, including whether and to what extent care is actually available within the system. These are precisely the types of assessments reviewing bodies, including courts, make on a regular basis.

The Court is simply not persuaded that Lamonica's interpretation of the regulation will produce "chaotic results." Whether or not a particular claimant's subjective belief that the treatment available in the system is so inadequate or ineffective as to require "emergency" resort to an outside provider must still withstand the standard of objective reasonableness under the circumstances.

Here, there may or may not be enough evidence in the record to indicate that Lamonica reasonably believed her health was in immediate danger and that Kaiser's repeated failure to care properly for her enhanced the level of that danger. On remand, the ALJ must assess the questions, applying the prudent layperson test to determine whether Lamonica's decision to seek emergency medical treatment was prompted by an "emergency medical condition."[2]

---

[2] The question of whether Lamonica's delay in resorting to Dr. Korman for care undercuts her contention that the care she sought from him was for an emergency condition is subsumed

III.     **CONCLUSION**

_____For these reasons, the Court hereby **REMANDS** this case to the ALJ for further fact finding and analysis to determine whether Ms. Lamonica acted with the prudence required by 42 C.F.R. § 422.113 when she went outside the plan and obtained treatment from Dr. Korman.


          **IT IS SO ORDERED.**


                                        **s/Kathleen M. O'Malley**
                                        **KATHLEEN McDONALD O'MALLEY**
                                        **UNITED STATES DISTRICT JUDGE**


**Dated**: September 28, 2005

_____

within this analysis.  Contrary to Defendant's contention, the mere fact that Lamonica continued to try to work within the Kaiser system for some period after the acute flare-up of her symptoms, does not mean the treatment she ultimately did receive was not on an emergency basis.  Indeed, it is just as likely that Kaiser's continued failure to treat a condition which prevented Lamonica from eating had the effect of enhancing the emergency nature of the situation.